UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Scott Payne,<br>individually and on behalf of all others<br>similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>Hormel Foods Corp.; the Board of<br>Directors of Hormel Foods Corp.; and<br>John Does 1 – 40,<br><br>              Defendants. | Court File No. _____<br><br>**CLASS ACTION COMPLAINT** |

Through the undersigned counsel, Plaintiff Scott Payne, on behalf of the Hormel Foods Corporation Tax Deferred Investment Plan A, the Hormel Foods Corporation Joint Earnings Profit Sharing Trust, and individually and on behalf of all others similarly situated, files this class action complaint against Defendants Hormel Foods Corp. and John Does 1 through 40. On his personal knowledge or on investigation and the information and belief of his counsel, Plaintiff avers the following:

## INTRODUCTION

1. Plaintiff brings this putative class action under the Employee Retirement Income Security Act (ERISA) against the fiduciaries of the Hormel Foods Corporation Tax Deferred Investment Plan A and the Hormel Foods Corporation Joint Earnings Profit Sharing Trust (collectively the Plans) for breach of fiduciary duty. Those fiduciaries are

Defendant Hormel Foods Corporation, its Board of Directors, and other individuals to be identified.

2. The Plans are defined-contribution retirement benefit plans. ERISA requires fiduciaries to prudently manage assets in such plans. Among other duties, such fiduciaries must regularly monitor plan assets and determine whether the investments are prudent and appropriate for the plan, and remove or replace those that are imprudent due to excess cost or substandard performance.

3. Defendants breached their fiduciary duty of prudence by selecting and/or maintaining certain stable-value investments with lower crediting rates when similar or identical investments with higher crediting rates were available.

4. Defendants further breached their fiduciary duty of prudence by selecting and/or maintaining higher-cost share classes for certain mutual funds in the Plans when lower-cost share classes were available.

5. Plaintiff is a participant in the Plans. He brings this action on behalf of the Plans and on behalf of similarly situated participants to seek redress for Defendants' breaches of fiduciary duty.

**PARTIES**

6. Plaintiff Scott Payne is a natural person residing in the state of Kansas. At all times relevant to this Class Action Complaint, Plaintiff has been a participant in the Plans.

7. Defendant Hormel Foods Corporation (Hormel) is the sponsor of the Plans and maintains its principal place of business in Austin, Minnesota.

8.      Because at all times relevant to this Class Action Complaint, Hormel had discretion to select or reject the Plans' investments, Hormel is a fiduciary of the Plans.

9.      Acting for Hormel, the Hormel Foods Corporation Board of Directors consists of persons authorized or otherwise entrusted to make discretionary decisions with regard to the Plans' investments.

10.     Because at all times relevant to this Class Action Complaint, the Hormel Foods Corporation Board of Directors had discretion to select or reject the Plans' investments, the Board members are fiduciaries of the Plans.

11.     Defendants John Doe 1 through 40 (the John Doe Defendants) are persons authorized or otherwise entrusted to make discretionary decisions with regard to the Plans' investments.

12.     The John Doe Defendants shall encompass all Hormel officers, employees, and/or contractors who, at all times relevant to this Class Action Complaint, are fiduciaries of the Plans. Plaintiff reserves the right to further identify the John Doe Defendants and amend this Complaint accordingly.

## JURISDICTION AND VENUE

13.     The Local conducts substantial business in this District, including but not limited to employment of participants in the Plans and activities relating to management and administration of the Plans.

14.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States. In addition, jurisdiction is proper in

3

this Court pursuant to 29 U.S.C. § 1332(e)(1) because the claims in this action are subject to exclusive federal jurisdiction under ERISA. *See* 29 U.S.C. § 1132(e)(1).

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Hormel resides in this District and a substantial part of the conduct and omissions giving rise to Plaintiff's claim occurred in this District. In addition or in the alternative, venue is proper in this District under ERISA because the Plans are administered in this District, the breaches of fiduciary duty occurred in this District, or one or more Defendants reside in this District. *See* 29 U.S.C. § 1132(e)(2).

## FACTUAL ALLEGATIONS

16. The Hormel Foods Corporation Tax Deferred Investment Plan A was formed in 1986. This Plan is a defined-contribution retirement benefit plan under ERISA. At all times relevant to this Class Action Complaint, this Plan had at least $796 million in assets under management, which were entrusted to Defendants' care.

17. The Hormel Foods Corporation Joint Earnings Profit Sharing Trust was formed in 1955. This Plan is a defined-contribution retirement benefit plan under ERISA. At all times relevant to this Class Action Complaint, this Plan had at least $446 million in assets under management, which were entrusted to Defendants' care.

18. The Plans together hold at least $1.2 billion in assets under management. Due to their size, the Plans have substantial power to bargain for less expensive investments and higher-performing investments.

19. Defendants violated their fiduciary duty by failing to monitor the cost or performance of existing investments, by failing to select investments that had lower expenses, and/or failing to select better-performing investments.

A.  **Violations Relating to Stable-Value Funds**

20. At all times relevant to this Class Action Complaint, the Plans offered a type of fixed annuity as a stable-value investment option: a MassMutual general-account guaranteed investment contract (GIC).

21. For defined-contribution retirement benefit plans, stable-value investments are intended to provide participants with an option that protects their principal and is shielded from risks of loss.

22. Single entity GICs are issued by insurance companies in the form of a fixed-annuity contract. Under the terms of those contracts, GICs provide for a guaranteed rate of return or "crediting rate" during a specified period.  GICs may be structured as "general account" GICs or "separate account" GICs.

23. For a general-account GIC, the insurer's payment obligations are backed by the insurer's unrestricted general accounts. Because the funds are kept in unrestricted accounts, they are generally subject to claims and liabilities asserted against the insurer. Such funds are subject to single-entity credit risk, meaning the insurer is the sole entity responsible for paying such funds; if the insurer fails, no other entity will satisfy the loss.

24. For a separate-account GIC, the insurer's payment obligations are putatively backed by a separate account, which is less susceptible to claims and liabilities against the insurer.

5

25. MassMutual establishes the crediting rates for its GICs with the Plans. Because the GICs are general-account GICs, MassMutual earns "spread" equal to the difference between the crediting rate and the returns MassMutual earns on the funds in its general accounts.

26. Because general-account GICs are more vulnerable to single-entity credit risk and are riskier than separate-account GICs, general-account GICs typically have higher crediting rates than separate-account GICs.

27. During the time period at issue in this Class Action Complaint, the Plans received a lower crediting rate for MassMutual general-account GICs than other comparable Plans received for separate-account GICs. More specifically, the Plans continued holding riskier general-account GICs that paid substantially lower crediting rates than safer separate-account GICs.

28. Based on sources that compile crediting rates for MassMutual separate-account GICs, typical crediting rates for MassMutual separate-account GICs substantially outperformed the MassMutual general-account GICs in the Plans:

| Time Period (Calendar Quarter) | Crediting Rate for MassMutual General-Account GICs in the Plans (%) | Typical Crediting Rates for MassMutual Separate-Account GICs (%) | Loss (%) |
|---|---|---|---|
| 1Q 2017 | 3.20 | 3.91 | 0.71 |
| 2Q 2017 | 3.20 | 4.02 | 0.82 |
| 3Q 2017 | 3.20 | 3.96 | 0.76 |
| 4Q 2017 | 3.20 | 3.97 | 0.77 |
| 1Q 2018 | 3.10 | 4.22 | 1.12 |
| 2Q 2018 | 3.10 | 4.64 | 1.54 |
| 3Q 2018 | 3.10 | 4.68 | 1.58 |
| 4Q 2018 | 3.10 | 4.66 | 1.56 |

| Time Period | | | |
|---|---|---|---|
| 1Q 2019 | 3.10 | 4.66 | 1.56 |
| 2Q 2019 | 3.10 | 4.47 | 1.37 |
| 3Q 2019 | 3.10 | 4.41 | 1.31 |
| 4Q 2019 | 3.10 | 4.55 | 1.45 |
| 1Q 2020 | 3.00 | 4.03 | 1.03 |
| 2Q 2020 | 3.00 | 4.03 | 1.03 |
| 3Q 2020 | 3.00 | 4.03 | 1.03 |
| 4Q 2020 | 3.00 | 4.03 | 1.03 |
| 1Q 2021 | 3.00 | 4.03 | 1.03 |
| 2Q 2021 | 3.00 | 4.03 | 1.03 |
| 3Q 2021 | 3.00 | 4.03 | 1.03 |
| 4Q 2021 | 3.00 | 4.03 | 1.03 |
| 1Q 2022 | 3.00 | 4.03 | 1.03 |
| 2Q 2022 | 3.00 | 4.03 | 1.03 |
| 3Q 2022 | 3.00 | *no data available* | |
| 4Q 2022 | 3.00 | *no data available* | |
| 1Q 2023 | 3.00 | *no data available* | |
| 2Q 2023 | 3.00 | *no data available* | |
| 3Q 2023 | 3.00 | 3.81 | 0.81 |
| 4Q 2023 | 3.00 | 3.81 | 0.81 |

The large difference between crediting rates for the general-account GIC in the Plans and separate-account GICs elsewhere further signals that MassMutual retained significantly higher "spread" for that general-account GIC than for its other GIC offerings.

29.     The MassMutual general-account GICs in the Plans also underperform when compared against other fixed-annuity general-account investments. For instance, crediting rates for TIAA-CREF traditional general-account annuities substantially outperformed the MassMutual general-account GICs in the Plans:

| Time Period | Crediting Rate for MassMutual General-Account GICs in the Plans (%) | Crediting Rate for TIAA-CREF Traditional Annuity (%) | Loss (%) |
|---|---|---|---|
| 1Q 2017 | 3.20 | 4.80 | 1.60 |
| 2Q 2017 | 3.20 | 4.80 | 1.60 |
| 3Q 2017 | 3.20 | 4.80 | 1.60 |

7

| | | | |
|---|---|---|---|
| 4Q 2017 | 3.20 | 4.80 | 1.60 |
| 1Q 2018 | 3.10 | 4.80 | 1.70 |
| 2Q 2018 | 3.10 | 4.80 | 1.70 |
| 3Q 2018 | 3.10 | 4.80 | 1.70 |
| 4Q 2018 | 3.10 | 4.80 | 1.70 |
| 1Q 2019 | 3.10 | 4.80 | 1.70 |
| 2Q 2019 | 3.10 | 4.80 | 1.70 |
| 3Q 2019 | 3.10 | 4.80 | 1.70 |
| 4Q 2019 | 3.10 | 4.80 | 1.70 |
| 1Q 2020 | 3.00 | 4.25 | 1.25 |
| 2Q 2020 | 3.00 | 4.25 | 1.25 |
| 3Q 2020 | 3.00 | 4.25 | 1.25 |
| 4Q 2020 | 3.00 | 4.25 | 1.25 |
| 1Q 2021 | 3.00 | 4.25 | 1.25 |
| 2Q 2021 | 3.00 | 4.25 | 1.25 |
| 3Q 2021 | 3.00 | 4.25 | 1.25 |
| 4Q 2021 | 3.00 | 4.25 | 1.25 |
| January 2022 – April 2022 | 3.00 | 4.85 | 1.85 |
| May 2022 – October 2022 | 3.00 | 6.10 | 3.10 |
| November 2022 – December 2022 | 3.00 | 6.85 | 3.65 |
| January 2023 | 3.00 | 6.50 | 3.50 |
| February 2023 – April 2023 | 3.00 | 6.25 | 3.25 |
| May 2023 – June 2023 | 3.00 | 6.50 | 3.50 |
| July 2023 – October 2023 | 3.00 | 6.75 | 3.75 |
| November 2023 – December 2023 | 3.00 | 7.00 | 4.00 |

30. Because the Plans hold at least $1.2 billion in assets under management, they have considerable leverage to bargain for higher crediting rates.

31. A prudent fiduciary knew or should have known MassMutual or other providers of fixed annuities offer substantially identical, better-performing stable-value investments. A prudent fiduciary could have accomplished this goal by demanding higher

8

crediting rates from MassMutual and/or by submitting requests for proposals to MassMutual and other providers of stable-value investments.

32. By selecting a general-account GIC with an underperforming crediting rate, Defendants failed to provide participants with an option that adequately protected their principal, exposing participants to unreasonable loss of value versus inflation over time.

33. In addition or in the alternative, a prudent fiduciary knew or should have known that MassMutual offered separate-account GICs that had higher crediting rates than its general-account GICs and that were less susceptible to single-entity credit risk. The existence of MassMutual's higher-performing separate-account GICs also would have put a prudent fiduciary on notice that the Plans could obtain better-performing stable-value investments.

34. To the extent the Plans maintained funds in the MassMutual general-account GIC, those funds also were not adequately diversified. As a general-account GIC, this fund is subject to the single-entity credit risk of MassMutual alone, rather than a diversified pool of assets. A prudent fiduciary would have selected a stable-value fund that was diversified or had other suitable measures for shielding against single-entity credit risk.

**B.   Violations Relating to Mutual-Fund Share Classes**

35. Many mutual fund companies offer multiple "share class" options for each mutual fund. The only difference between share classes is the cost; the mutual fund holds the same investments and has the same managers. Some share classes are targeted at smaller defined-benefit retirement plans or individual investors, for which the mutual fund

company charges higher costs. Other share classes are targeted at larger investment plans, for which the mutual fund company charges lower costs.

36. A prudent fiduciary of a defined-benefit retirement plan would know when the plan selects a mutual fund, it should also select the least expensive share class for which the plan qualifies. In addition, a prudent fiduciary of a larger plan would know that the plan can use its size to leverage additional bargaining power and demand a less expensive share class.

37. Because the Plans hold at least $1.2 billion in assets under management, they are among the larger plans that would typically qualify for less expensive share classes.

38. Higher expense ratios, even when they are fractions of a percent, can have a large impact on performance of plan participants' investments over time. The participants not only lose the money spent on excessive fees, but also suffer from lost investment opportunity: the money that was spent on excessive fees could have been invested and grown over time.

39. For certain mutual funds the Plans held, Defendants selected more expensive share classes when the Plans qualified for and could have selected less expensive share classes:

| Mutual Fund | Share Class in Plans | Net Expense Ratio (%) | Less Expensive Share Class | Reduced Net Expense Ratio (%) | Excess Cost (%) |
|---|---|---|---|---|---|
| 2017 | | | | | |
| Dimensional Fund Advisors | DFLVX Institutional Class | 0.27 | DFLUX Institutional Class | 0.13 | 0.14 |

| | | | | | |
|---|---|---|---|---|---|
| USA Large Cap Value | | | | | |
| Harbor Capital Appreciation | HACAX Institutional Class | 0.65 | HNACX Retirement Class | 0.57 | 0.08 |
| 2018 | | | | | |
| Dimensional Fund Advisors USA Large Cap Value | DFLVX Institutional Class | 0.27 | DFLUX Institutional Class | 0.13 | 0.14 |
| Harbor Capital Appreciation | HACAX Institutional Class | 0.66 | HNACX Retirement Class | 0.58 | 0.08 |
| 2019 | | | | | |
| Dimensional Fund Advisors USA Large Cap Value | DFLVX Institutional Class | 0.27 | DFLUX Institutional Class | 0.13 | 0.14 |
| Harbor Capital Appreciation | HACAX Institutional Class | 0.66 | HNACX Retirement Class | 0.58 | 0.08 |
| 2020 | | | | | |
| Dimensional Fund Advisors USA Large Cap Value | DFLVX Institutional Class | 0.26 | DFLUX Institutional Class | 0.14 | 0.12 |
| Harbor Capital Appreciation | HACAX Institutional Class | 0.67 | HNACX Retirement Class | 0.59 | 0.08 |
| 2021 | | | | | |
| Dimensional Fund Advisors USA Large Cap Value | DFLVX Institutional Class | 0.22 | DFLUX Institutional Class | 0.14 | 0.08 |
| Harbor Capital Appreciation | HACAX Institutional Class | 0.67 | HNACX Retirement Class | 0.59 | 0.08 |

40. There are no significant differences between the different share classes associated with each mutual fund. Notwithstanding the different share classes, each

11

underlying fund holds the same investments in furtherance of the same investment objectives and is managed by the same management team.

41. Defendants knew or should have known that substantially identical, less expensive share classes were available and prudently transferred the Plans' investments from the more expensive to the less expensive share classes.

## CLASS ACTION ALLEGATIONS

42. This action is brought and properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the Class):

> All persons who were participants in or beneficiaries of the Hormel Foods Corporation Tax Deferred Investment Plan A and/or the Hormel Foods Corporation Joint Earnings Profit Sharing Trust at any time during the period from six years prior to the filing of the Complaint in this action to the date of class certification.

43. The Class shall not include any Defendants, the Judge(s) assigned to this case, or any of the Judge(s)' family members.

44. The Class is so numerous that joinder of individual plaintiffs is not practical. The actual number of Class members is not precisely known but is anticipated to be no fewer than 5,000. Defendants have information that makes it feasible to determine the actual number of Class members.

45. This litigation presents numerous questions of law and fact that are common to both Plaintiff and the Class, and these questions predominate over any questions that may affect individual Class members. These questions include but are not limited to the following:

    a.    Whether Defendants are fiduciaries of the Plans.

    b.    Whether Defendants breached their fiduciary duties by selecting or maintaining the MassMutual general-account GIC for the plans' stable value fund when other, better-performing or less risky GICs were available.

    c.    Whether Defendants breached their fiduciary duty of prudence by selecting or maintaining more expensive share classes of mutual funds in the Plans when less expensive share classes were available.

    d.    What equitable and/or injunctive relief is appropriate or necessary to correct prior breaches of fiduciary duty and prevent further breaches in the future.

46. Plaintiff's claim is typical of those of Class members in that Plaintiff, like all Class members, participated in the Plans and suffered harm from Defendants' breaches of fiduciary duty. Defendants engaged in uniform practices for the Plans' management which affected Plaintiff and other Plan participants in similar ways.

47. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff retained experienced counsel with the necessary expertise and resources to prosecute class action litigation. Plaintiff and his counsel do not anticipate circumstances where Plaintiff's interests would be adverse to those of Class members.

48. Class action proceedings are necessary because individual proceedings could cause judgments that create incompatible standards of conduct for Defendants. In addition or in the alternative, through their breaches of fiduciary duty, Defendants have acted or

refused to act on grounds that apply generally to the Class, such that final injunctive, declaratory, or other equitable relief is appropriate for the Class as a whole.

## FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty
### ERISA §§ 404(a)(1), 405(a), 409(a), 502(a)(3)
### individually and on behalf of the Class

49. Plaintiff incorporates by reference the allegations in the prior paragraphs of this Complaint.

50. Under ERISA § 502(a)(3), a civil action may be brought by a retirement-benefit plan participant or beneficiary to enjoin illegal plan practices and/or to pursue other appropriate relief to redress plan violations. 29 U.S.C. § 1332(a)(3).

51. Under ERISA § 404(a)(1)(B), the fiduciaries of a retirement-benefit plan have a duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]" 29 U.S.C. § 1104(a)(1)(B).

52. Under ERISA § 404(a)(1)(C), the fiduciaries of a retirement-benefit plan also have a duty to diversify plan investments "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so[.]" 29 U.S.C. § 1104(a)(1)(C).

53. In accordance with ERISA § 409(a), if a fiduciary to a retirement-benefit plan breaches their fiduciary duty, the fiduciary is personally liable to the plan for any losses resulting from the breach, along with such other equitable or remedial relief as may be deemed appropriate. 29 U.S.C. § 1109(a).

54. In accordance with ERISA § 405(a), a fiduciary shall be liable for other fiduciaries' breaches of fiduciary duty if the fiduciary (1) knowingly participates in the acts or omissions of the other fiduciaries, knowing their acts or omissions is a breach of fiduciary duty; (2) fails to comply with their own fiduciary duties and thereby enables other fiduciaries to commit a breach; or (3) knows about other fiduciaries' breaches and has not made reasonable efforts under the circumstances to remedy the breach.

55. In accordance with ERISA § 3(21)(A), a person who exercises discretionary authority or control respecting retirement-benefit plan assets or disposition of its assets is a fiduciary of the plan. 29 U.S.C. § 1002(21)(A).

56. Plaintiff is a participant in the Plans.

57. Because Defendants exercise discretionary authority or control with regard to the selection, retention, and disposition of the Plans' investments, including but not limited to decisionmaking about stable-value investments and/or mutual fund share classes, Defendants are fiduciaries of the Plans.

58. Defendants breached their fiduciary duties and violated ERISA by failing to exercise their duty of care, skill, prudence, and diligence in connection with their decisionmaking about stable-value investments.

   a. Defendants breached this duty by selecting and retaining the MassMutual general-account GIC when a prudent fiduciary could have obtained a substantially identical MassMutual separate-account GIC with a significantly higher crediting rate.

b. Defendants breached this duty by selecting and retaining the MassMutual general-account GIC when a prudent fiduciary, leveraging the Plans' bargaining power, could have made requests for proposal to MassMutual and/or other purveyors of substantially similar fixed annuities and obtained a significantly higher crediting rate.

c. Defendants breached this duty by selecting and retaining the MassMutual general-account GIC, which as a result of being held in unrestricted general accounts, unreasonably subjected Plan participants to single-entity credit risk.

59. Defendants breached their fiduciary duties and violated ERISA by failing to exercise their duty of care, skill, prudence, and diligence in connection with their decisionmaking about mutual fund share classes. Defendants breached this duty by selecting and retaining more expensive share classes in certain mutual funds when the Plans qualified for and could have selected less expensive share classes in the same mutual funds.

60. Defendants breached their fiduciary duty and violated ERISA by failing to satisfy their duty to diversify plan investments so as to minimize the risk of large losses. Defendants breached this duty by selecting and retaining the MassMutual general-account GIC when that investment was subject to the single-entity credit risk of MassMutual alone.

61. Defendants' breaches of fiduciary duty caused the Plans to suffer losses. With regard to the stable-value investments, the losses arose out of underperforming crediting rates. With regard to the mutual fund share classes, the losses arose out of the increased expense ratios associated with higher-cost share classes. Had Defendants

16

complied with their fiduciary duties, the Plans would not have suffered these losses and Plan participants would have more retirement benefits.

62. Defendants are personally liable to the Plans for the losses attributable to their breaches of fiduciary duty, including but not limited to any losses attributable to imprudent selection and/or retention of stable-value investments and mutual fund share classes.

63. To the extent each Defendant (1) knowingly participated in other Defendants' breaches of fiduciary duty, (2) failed to comply with their own fiduciary duties and enabled other Defendants' breaches of fiduciary duty, and/or (3) knew about other Defendants' breaches of fiduciary duty and did not make reasonable efforts to remedy those breaches, that Defendant is further liable for the breaches of the other Defendants.

64. Plaintiff and the Class accordingly demand judgment against Defendants to enjoin any and all of their illegal practices in management or administration of the Plans; to hold them liable for any losses resulting from their breaches of fiduciary duty and/or other Defendants' breaches; and any other appropriate equitable relief to redress Defendants' violations of the Plans.

## **PRAYER FOR RELIEF**

Plaintiff Scott Payne, individually and on behalf of the Class, prays for relief against Defendants as follows:

1. All equitable and injunctive relief permitted under ERISA or otherwise authorized by law, including but not limited to Defendants making restitution to the Plans

for any losses caused by their breaches of fiduciary duty and injunctions forbidding further illegal practices in the future.

    2.    Class certification under Rule 23 of the Federal Rules of Civil Procedure and appointment of the undersigned counsel as Class Counsel.

    3.    Injunctive and equitable relief.

    4.    Pre-judgment interest, costs, and attorney fees.

    5.    Any other relief this Court deems just and equitable.

Dated February 21, 2024.

        s/Scott A. Moriarity
        Shawn J. Wanta, Lic. No. 0389164
        Scott A. Moriarity, Lic. No. 0321977
        Katherine E. Rollins, Lic. No. 0402808
        WANTA THOME PLC
        100 South Fifth Street, Suite 1200
        Minneapolis, MN 55402
        612-252-3570
        sjwanta@wantathome.com
        samoriarity@wantathome.com
        kerollins@wantathome.com

        ATTORNEYS FOR PLAINTIFF