UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Scott Payne, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Hormel Foods Corp.; the Board of Directors of Hormel Foods Corp.; and John Does 1-40,<br><br>　　　　　　Defendants. | No. 0:24-cv-545-SRN-DTS<br><br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2~~2~~

I. PAYNE'S GIC CLAIM FAILS TO STATE A CLAIM FOR RELIEF ............. 2~~2~~

    A. The Complaint does not plausibly allege that the alleged higher crediting rates were available ................................................................. 3~~3~~

    B. Payne fails to allege that the Stable Value Comparators had the same "aims," "risks" and "rewards" as the GIC ................................. 5~~5~~

    C. Other courts that have allowed GIC claims to proceed do not follow Eighth Circuit law ........................................................................ 8~~8~~

II. PAYNE'S SHARE CLASS CLAIM FAILS TO STATE A CLAIM FOR RELIEF ........................................................................................................... 9~~9~~

    A. The Harbor Fund claim fails ................................................................... 9~~9~~

    B. The DFA Fund also fails ....................................................................... 11~~11~~

III. THE BOARD OF DIRECTORS MUST BE DISMISSED ............................. 12~~12~~

IV. PAYNE SHOULD NOT BE GIVEN LEAVE TO AMEND ........................ 12~~12~~

CONCLUSION ............................................................................................................. 13~~13~~

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................................. 9

*Coppel v. Parks*,
   No. 3:21-cv-01430, 2023 U.S. Dist. LEXIS 68395 (S.D. Cal. Mar. 22,
   2023) ...................................................................................................................... 8

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ........................................................................... *passim*

*Disselkamp v. Norton Healthcare, Inc.*,
   No. 3:18-CV-00048, 2019 U.S. Dist. LEXIS 129519 (W.D. Ky. Aug.
   2, 2019) .................................................................................................................. 8

*Forman v. TriHealth, Inc.*,
   40 F.4th 443 (6th Cir. 2022) ............................................................................ 9, 10

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022) ............................................................................................ 9

*Hughes v. Nw. Univ.*,
   63 F.4th 615 (7th Cir. 2023) .............................................................................. 11

*Jacobs v. Verizon Communs., Inc.*,
   16 Civ. 1082, 2017 U.S. Dist. LEXIS 162703 (S.D.N.Y. Sept. 28,
   2017) ...................................................................................................................... 7

*Johnson v. Parker-Hannifin*,
   No. 2023 U.S. Dist. LEXIS 214747, 2023 U.S. Dist. LEXIS 214747
   (N.D. Ohio Dec. 4, 2023) .................................................................................. 11

*Kong v. Trader Joe's Co.*,
   No. 20-56415, 2022 U.S. App. LEXIS 10323 (9th Cir. 2022) ................... 10

*Laabs v. Faith Techs., Inc.*,
   No. 20-CV-1534, 2023 U.S. Dist. LEXIS 233547 (E.D. Wis. Aug. 30,
   2023) ........................................................................................................... 4, 5, 7, 9

CASE 0:24-cv-00545-SRN-DTS   Doc. 25   Filed 06/07/24   Page 4 of 18

*Lalonde v. Mass. Mut. Ins. Co.*,
   No. 22-30147, 2024 U.S. Dist. LEXIS 57670 (D. Mass. Mar. 29,
   2024) ............................................................................................................... 4, 9

*Loomis v. Exelon Corp.*,
   No. 06 CV 4900, 2009 U.S. Dist. LEXIS 114626 (N.D. Ill. Dec. 9,
   2009) .................................................................................................................... 12

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ........................................................................ 10, 11

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ........................................................................... *passim*

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ................................................................................... 2

*Miller v. Autozone, Inc.*,
   No. 2:19-cv-02779, 2020 U.S. Dist. LEXIS 206813 (W.D. Tenn. Sept.
   18, 2020) ................................................................................................................ 8

*Moler v. Univ. of Md. Med. Sys.*,
   No. 1:21-cv-01824, 2022 U.S. Dist. LEXIS 124804 (D. Md. July 13,
   2022) ...................................................................................................................... 8

*Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*,
   No. 17-cv-04992, 2018 U.S. Dist. LEXIS 119331 (N.D. Cal. July 17,
   2018) ...................................................................................................................... 3

*Phx. Entm't Partners, LLC v. Star Music, Inc.*,
   No. 06 CV 4900, 2017 U.S. Dist. LEXIS 195497 (D. Minn. 2017) ....................... 12

*Pliam v. Cendant Mortg. Corp.*,
   No. 11-3720, 2012 U.S. Dist. LEXIS 58222 (D. Minn. 2012) ............................... 12

*Rodriguez v. Hy-Vee, Inc.*,
   No. 2022 U.S. Dist. LEXIS 200906, 2022 U.S. Dist. LEXIS 200906
   (S.D. Iowa 2022) ................................................................................................... 11

*Sandoval v. Exela Enterprise Solutions*,
   No. 3:17cv1573, 2020 U.S. Dist. LEXIS 253226 (D. Conn. Mar. 30,
   2020) .................................................................................................................. 3, 6

iii

*Spirt v. Teachers Ins. & Annuity Assoc.*,
   475 F. Supp. 1298 (S.D.N.Y. 1979) .............................................................. 4

*Tobias v. Nvidia Corp.*,
   No. 20-CV-06081, 2021 U.S. Dist. LEXIS 173539 (N.D. Cal. Sept.
   13, 2021) ...................................................................................................... 10

*Tussey v. ABB, Inc.*,
   850 F.3d 951 (8th Cir. 2017) ........................................................................ 2

*Wood v. Prudential Ret. Ins. & Annuity Co.*,
   No. 3:15-cv-1785, 2017 U.S. Dist. LEXIS 123128 (D. Conn. Aug. 4,
   2017) ........................................................................................................ 6, 8

**Statutes and Regulations**

29 U.S.C. § 1002(21)(a) .................................................................................. 12

**Other Authorities**

*2023 Annual Report*, Mass Mutual, 2024, available at
   https://www.massmutual.com/global/media/shared/doc/financial-documents/annual-reports/2023_annual_report.pdf ................................ 7

## INTRODUCTION

Payne's responsive brief ("Pl. Br.") highlights the numerous fatal flaws in his Complaint.

For the GIC Claim, Payne concedes he fails the Eighth Circuit's "meaningful benchmark" standard, instead arguing that the standard does not apply to the GIC Claim. This is contrary to Eighth Circuit precedent, which applies this standard to a diverse array of claims, including investments that offer a guaranteed return. Under the proper "meaningful benchmark" standard, the GIC Claim fails because the GIC is fundamentally different than the two Stable Value Comparators—among other things, its crediting rate is guaranteed to never fall below 3%. The GIC simply has different "aims," "risks," and "rewards" then the two comparators Payne offers. Even if the Stable Value Comparators did offer an "apples to apples" comparison, Payne does not argue or allege that the Plans even had the ability to negotiate for the higher crediting rates purportedly offered by the Stable Value Comparators. They are thus not "meaningful benchmarks."

The Share Class Claim fails too. Documents embraced by the Complaint show that, although the Harbor Fund's sticker price was higher than Payne's comparator, it was net cheapest when the Plans' revenue sharing is included. Payne's sole response is that the Court cannot evaluate those documents for their truth, despite Eighth Circuit case law doing just that. Nor does he dispute that the Alternative DFA Fund requires advisor approval to invest, and that he has not alleged that this approval was granted.

Payne's Complaint must be dismissed with prejudice.

1

## ARGUMENT

I. **Payne's GIC Claim Fails to State a Claim For Relief**

Payne does not dispute the Eighth Circuit's standard for ERISA fiduciary claims announced in *Meiners*, *Davis*, and *Matousek*: A bare allegation that a 401(k) plan's investment options had returns that were "too low" does not plausibly establish that plan fiduciaries were "asleep at the wheel." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280–82 (8th Cir. 2022).

Rather, if (as here) Payne seeks to plausibly establish a fiduciary duty claim through circumstantial allegations that plan investment options were consistently subpar, he must offer "a meaningful benchmark" against which to compare the challenged investment's performance. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). This "meaningful benchmark" must account for the nature and style of the challenged investment, because "some investments are simply meant to pay off less than others, in return for lower risks, different exposures, or countless other considerations." *Tussey v. ABB, Inc.*, 850 F.3d 951, 960 n.8 (8th Cir. 2017). A "meaningful benchmark" thus must be one with the same "aims," "risks," and "rewards" as the challenged fund.[1]

Payne candidly acknowledges that the Complaint does not satisfy this standard. Pl. Br. at 25 ("the record does not have sufficient information for a detailed technical comparison between stable-value investments."). Instead, he contends the standard is not applicable because the "stable-value investments"

---

[1] *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (citing *Meiners*, 898 F.3d at 823).

like the GIC are not "securities." *Id.* at 23. GICs are, in fact, securities.[2] But even more critically, the Eighth Circuit has applied the "meaningful benchmark" standard to a broad array of claims. *Davis*, for example, applied the "meaningful benchmark" test to a claim involving "a fixed-annuity contract"—which, like the GIC, "guarantee[s] a fixed minimum return." 960 F.3d at 486. *See also, e.g.*, *Sandoval v. Exela Enterprise Solutions*, No. 3:17cv1573, 2020 U.S. Dist. LEXIS 253226, at *18–20 (D. Conn. Mar. 30, 2020) (comparing "credit ratings and fees" in GIC claim). Likewise, in *Matousek*, the Eighth Circuit dismissed a challenge to recordkeeping fees—which are obviously not securities—based upon a failure to provide a "meaningful benchmark." *See Matousek*, 51 F.4th at 279–80.

The Complaint fails to allege any "meaningful benchmark" that plausibly suggests the retention of the GIC was the product of a flawed fiduciary process. This is fatal to Payne's GIC Claim.

### A. The Complaint does not plausibly allege that the alleged higher crediting rates were available

Naturally, the first step in evaluating whether Payne's two proposed benchmarks are "meaningful" is to determine whether the Complaint plausibly alleges that the Plans could have actually negotiated for the Stable Value Competitors' allegedly higher crediting rates.

Payne cannot dispute that the Complaint must plausibly make this allegation, as the Eighth Circuit has dismissed ERISA class actions on this basis alone. In *Matousek*, for example, the Eighth Circuit affirmed the dismissal of a complaint alleging that a plan's recordkeeping fees were excessive. 51 F.4th at

---

[2] *Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, No. 17-cv-04992, 2018 U.S. Dist. LEXIS 119331, at *29 (N.D. Cal. July 17, 2018).

279–80.  Despite generalized claims that some plans paid lower fees, the *Matousek* complaint did not "point to the fees paid by other specific, comparably sized plans" with similar bargaining power.  *Id.* at 279.  Alleging that other plans of an unknown size—potentially with far greater bargaining power—negotiated lower fees did not suggest that plaintiffs' plan was poorly run.  *Id.* at 280.  To state a claim under *Matousek*, the Complaint must plausibly allege that the two Stable Value Comparators' rates were actually available to the Plans.[3]

Surprisingly, Payne's brief does not try to argue that he met this burden.[4]  Nor can it, because the Complaint is entirely deficient.  With respect to the Separate-Account GIC, the Complaint only alleges a "typical crediting rate[]" that other unnamed plans allegedly were able to negotiate.  Compl. ¶ 28.  The allegations with respect to the TIAA-CREF Traditional Annuity are even more opaque:  the Complaint just lists crediting rates that TIAA-CREF apparently offered to some unknown plans, without even characterizing them as typical.[5]  *Id.* at ¶ 29.  Payne offers no allegations, conclusory or otherwise, about the size or bargaining power of the unnamed plans who purportedly negotiated these rates.

---

[3] *See also e.g.*, *Lalonde v. Mass. Mut. Ins. Co.*, No. 22-30147, 2024 U.S. Dist. LEXIS 57670, at *8, 27–28 (D. Mass. Mar. 29, 2024) (dismissing claim for failure to allege alternative stable value option was actually available to the plaintiff's plan); *Laabs v. Faith Techs., Inc.*, No. 20-CV-1534, 2023 U.S. Dist. LEXIS 233547, at *23–24 (E.D. Wis. Aug. 30, 2023) (same).

[4] *Compare* Def. Br. at 13–15, *with* Pl. Br. p. 23–26.

[5] The TIAA-CREF comparator suffers from yet another fatal deficiency—TIAA-CREF is a nonprofit that *only* provides investment services to "colleges, universities, independent schools, and certain other non-profit institutions that are engaged primarily in education or research." *Spirt v. Teachers Ins. & Annuity Assoc.*, 475 F. Supp. 1298, 1300 (S.D.N.Y. 1979).

4

The plans that were able to negotiate higher rates may well have been multiple times larger the Plans at issue in this case.

Payne's remaining allegations that other plans were "comparable" or that Hormel's Plans "have considerable leverage to bargain for higher crediting rates" (Compl. ¶¶ 27, 30) are insufficient to allege a "*meaningful* benchmark" as the Eighth Circuit requires. *Matousek*, 51 F.4th at 278–82 (emphasis in original) (rejecting vague allegation that "a larger plan like this one should have lower fees"). *See also Laabs*, 2023 U.S. Dist. LEXIS 233547, at *22–24 (dismissing claim that "plan should have leveraged its substantial bargaining power to obtain better crediting rates").

Simply put, Payne's allegations that some unknown plans of an unknown size negotiated higher crediting rates does not plausibly allege that the two Plans at issue in this case could *themselves* have negotiated those rates.[6] This mandates the dismissal of Payne's GIC claim.

### B.   Payne fails to allege that the Stable Value Comparators had the same "aims," "risks" and "rewards" as the GIC

Even if the Complaint plausibly alleged that the Plans could have obtained the purportedly higher crediting rates offered by the two Stable Value Comparators, Payne concedes he failed to allege that these proposed alternatives had the same "aims," "risks," and "rewards" as the GIC. *Davis*, 960 F.3d at 485; *see* Pl. Br. at 25 (admitting "insufficient information" to compare investments).

---

[6] Payne's conclusory allegation that "MassMutual retained significantly higher 'spread' for that general-account GIC than for its other GIC offerings" is, of course, hopelessly conclusory. Compl. ¶ 28. The "spread"-based claim also fails for the same reason as above: it is based on his allegation that other unidentified 401(k) plans of unidentified size negotiated higher crediting rates.

5

In fact, the record[7] in this Rule 12 motion demonstrates that the GIC and the Stable Value Comparators are very different investments. Accordingly, the Plans' decision to offer the GIC rather than the Stable Value Comparators does not create a circumstantial inference of fiduciary misbehavior.

1. **Guaranteed Crediting Rate**: Payne does not dispute that the Plans' GIC has a guaranteed minimum crediting rate that "will never fall below 3.00%" for the life of the contract.[8] And the Complaint does not allege that the Stable Value Comparators had a similar guaranteed minimum. Given Payne's admission that the "central" goal of a stable value fund is to "adequately shield[] principal from risk of loss," (Pl. Br. at 18) the Stable Value Comparators are not "meaningful benchmarks" for the GIC on this basis alone. *Sandoval*, 2020 U.S. Dist. LEXIS 253226, at *18–20 (dismissing GIC claim because "[t]here is no allegation that any of the other eleven stable value funds guaranteed any rate of return," so the plaintiff failed to establish an apples-to-apples comparison).

2. **Liquidity**: Nor does Payne allege that the Stable Value Comparators offered similar liquidity as the GIC. For example, in *Davis*, the Eighth Circuit noted "how difficult it is to pull money out" of the TIAA Traditional Annuity and the fees required to do so. 960 F.3d at 486–87. *See also Wood*, 2017 U.S. Dist. LEXIS 123128, at *13 (noting "diversity of … withdrawal and termination policies" in GICs). Payne does not allege how difficult or easy it is to pull money out of the

---

[7] Payne acknowledges that the documents the Defendants' relied upon in this portion of the motion are properly in the record. *Compare* Pl. Br. at 11–13 (challenging only the use of the ERISA § 408(b)(2) disclosures for GIC Claim), *with* Def. Br. at 12–22 (not citing those documents).

[8] Plan A 404(a) Fee Discl. at 2, 6, 9, 12, 17, 28; JEPST 404(a) Fee Discl. at 2, 5, 8, 11, 15, 16.

6

GIC or the Stable Value Comparators (Compl. ¶¶ 20–34) and therefore fails to allege an apples-to-apples comparison. *See Davis*, 960 F.3d at 485–86.

    3.    **Fees**: The Plans' GIC has no fees. The Complaint does not allege that the two Stable Value Comparators similarly do not have any fees, which it must if they are to serve as "apples to apples" comparisons. [9] *See Laabs*, 2023 U.S. Dist. LEXIS 233547, at *21–24 (concluding proposed alternative was not a "meaningful comparator" because, among other reasons, the plaintiff failed to "specify[] the fees associated with that investment").

    4.    **Dissimilar Risks**:  Unlike the characteristics listed above, the Complaint does include conclusory allegations that the GIC was riskier than a separate-account GIC. Compl. ¶¶ 23, 26. Plainly, however, a mere allegation that the GIC was "risky" does not state a claim. *See Jacobs v. Verizon Communs., Inc.*, 16 Civ. 1082, 2017 U.S. Dist. LEXIS 162703, at *20 (S.D.N.Y. Sept. 28, 2017) (dismissing conclusory allegation that plan offerings were "overly risky").[10]

Outside of conclusory allegations, the Complaint does not plausibly suggest the GIC was riskier than a separate-account GIC. Instead, it suggests the funds have different *kinds* of risk. On the one hand, given the guaranteed 3% minimum crediting rate, the GIC only faces the risk of catastrophic collapse of MassMutual—a Fortune 500 company with over $300 billion in assets.[11] On the other hand, a

---

[9] *See* DoL Report at 5 (noting "costs and fees" as factor to consider).

[10] Like the GIC, the TIAA-CREF Traditional Annuity is, simply a promise to pay issued by TIAA-CREF, subject to the exact same risk of loss as the GIC if TIAA-CREF were to go bankrupt.

[11] *2023 Annual Report*, Mass Mutual, 2024, at 4, 6, available at https://www.massmutual.com/global/media/shared/doc/financial-documents/annual-reports/2023_annual_report.pdf.

7

separate-account GIC has a very different set of risks. "Unlike investments in an insurer's general account, gains and losses within separate accounts cannot be offset by the performance of other investments." *Wood*, 2017 U.S. Dist. LEXIS 123128, at *13. Contrary to the Complaint's claims, the GIC is not riskier than a separate-account GIC; it simply carries different risks.  The adoption of one kind of risk over another is not indicative of fiduciary malfeasance. *Matousek*, 51 F.4th at 281 (noting that an apt comparator requires funds with a "similar risk profile").

> C. **Other courts that have allowed GIC claims to proceed do not follow Eighth Circuit law**

Although certain cases allowed GIC claims to survive a motion to dismiss, they do not apply here.  In those cases, the courts relied on other circuits' precedents that did not require plaintiffs to allege a "meaningful benchmark." *See Coppel v. Parks*, No. 3:21-cv-01430, 2023 U.S. Dist. LEXIS 68395, at *46 (S.D. Cal. Mar. 22, 2023) ("'apples to apples' comparison … is not required in the Ninth Circuit"); *Moler v. Univ. of Md. Med. Sys.*, No. 1:21-cv-01824, 2022 U.S. Dist. LEXIS 124804, at *15 (D. Md. July 13, 2022) ("adequacy or sufficiency of comparable benchmarks is … not properly resolved on a motion to dismiss"); *Miller v. Autozone, Inc.*, No. 2:19-cv-02779, 2020 U.S. Dist. LEXIS 206813, at *19–22 (W.D. Tenn. Sept. 18, 2020) (refusing to consider defendant's arguments against comparator GIC)[12]  *Meiners*, *Davis*, and *Matousek*, of course, are directly contrary. *Supra* 2–3.

---

[12] Although the Court in *Disselkamp v. Norton Healthcare, Inc.*, was not clear about the standard it was applying, it is distinguishable because that complaint "read as a whole"—featuring many additional claims not alleged by Payne—stated a claim that the "factual circumstances that the decision-making process" for the stable value fund "was flawed." *Id.* at *25–37 (discussing claims including excessive

8

Where courts have applied *Meiners*-style "meaningful benchmark" analyses, they have consistently dismissed GIC claims as improperly pled. *E.g.*, *Lalonde*, 2024 U.S. Dist. LEXIS 57670, at *28; *Laabs*, 2023 U.S. Dist. LEXIS 233547, at *22–24. The same result applies here: because Payne failed to properly allege a "meaningful benchmark," his GIC claim must be dismissed.

## II. Payne's Share Class Claim Fails to State a Claim For Relief

### A. The Harbor Fund claim fails

As the Plans' disclosures demonstrate,[13] when the 10 basis points of revenue sharing is taken into account, the Plans' Harbor Fund share class was the net cheapest. Payne's various attempts to avoid dismissal all fail.

1. Contrary to Payne's suggestion, precedent does not mandate that any share class claim automatically proceeds past a motion to dismiss. The "appropriate inquiry" is always "context specific." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 739 (2022). "Mere allegations that a retirement plan chose retail over institutional share classes … does not provide a universal golden ticket past a motion to dismiss." *Forman v. TriHealth, Inc.*, 40 F.4th 443, 453 (6th Cir. 2022).

This case's record differs fundamentally from the cases cited by Payne, where the Eighth Circuit allowed share-class claims past a motion to dismiss because the "defendant" offered "speculation" that the plan "*could have* chosen funds with higher fees" for revenue-sharing purposes. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009) (emphasis added); *see Davis*, 960 F.3d at 483

---

administrative fees, failure to diversify, failure to monitor, and disclosure violations).

[13] *See* 2016 Plan Comm'n at 3; Plan A 408(b)(2) Fee Discl. at 1, 3, 6, 8; JEPST Fee 408(b)(2) Discl. at 1, 3, 5, 7, 9.

9

(same).[14] In those cases, documents did not demonstrate the plans actually received revenue sharing that exceeded the higher cost of the more expensive share classes. Here, of course, there is such evidence, which is fatal to Payne's claim. *Supra* 9 n.12.

In fact, other courts dismissed share class claims on Rule 12 where documents demonstrated that, when revenue sharing is taken into account, the plan paid the lowest fees. *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1149–55 (10th Cir. 2023); *Tobias v. Nvidia Corp.*, No. 20-CV-06081, 2021 U.S. Dist. LEXIS 173539, at *28–34 (N.D. Cal. Sept. 13, 2021). Payne does not dispute the holdings of these cases, but instead incorrectly suggests that they are inconsistent with Eighth Circuit law. Pl. Br. at 31 n.10. Neither *Braden* nor *Davis* requires the Court *ignore* documents embraced by the Complaint demonstrating the Plans' share class was net cheapest.

2.     Nor can Payne survive the motion to dismiss by arguing that the Court cannot examine the 408(b)(2) Fee Disclosures or 2016 Plan Communication. The Eighth Circuit itself has, in fact, relied on "plan disclosures" when affirming the dismissal of ERISA claims. *See Matousek*, 51 F.4th at 279 (considering "participant-disclosure forms"); *Davis*, 960 F.3d at 484 n.3 (considering "plan disclosure documents"). Further, Payne does not dispute that he received the 2016 Plan Communication reporting the 10 basis point rebate for the Harbor Fund. Pl. Br. at 9. Rather, Payne argues the Court cannot consider the truth of the information in the document. *Id.* Yet in *Matousek*, *Davis*, and *Meiners*, "the Eighth

---

[14] *See also e.g.*, *Forman*, 40 F.4th at 450 ("Perhaps the plan has revenue-sharing arrangements"); *Kong v. Trader Joe's Co.*, No. 20-56415, 2022 U.S. App. LEXIS 10323, at *3 (9th Cir. 2022) ("what could occur in theory—not what occurred in fact").

Circuit has gone further than merely accepting the fact that the documents embraced by the pleadings contain a statement and instead has presumed the accuracy of those statements." *Rodriguez v. Hy-Vee, Inc.*, No. 2022 U.S. Dist. LEXIS 200906, 2022 U.S. Dist. LEXIS 200906, at *13 (S.D. Iowa 2022) (cleaned up).

3. Finally, Payne cannot avoid dismissal by arguing that the disclosure forms are unclear whether the revenue sharing would be provided to Payne himself or used for Plan expenses. Initially, the evidence in the record—including disclosures made to Payne—demonstrates that rebate was given directly to him. Def. Br. at 26. Regardless, even if it was used to pay Plan expenses, courts recognize that is a prudent use of the funds justifying a higher cost share class so long as the net fee is cheaper. *See Matney*, 80 F.4th at 1151–52 & n. 12, 13.

### B. The DFA Fund also fails

Payne's DFA Fund claim should also be dismissed. He does not dispute cases holding that to sustain a "share class" claim a plaintiff must allege that the "cheaper … shares were plausibly available." *Hughes v. Nw. Univ.*, 63 F.4th 615, 635 (7th Cir. 2023). *See also, e.g., Johnson v. Parker-Hannifin*, No. 2023 U.S. Dist. LEXIS 214747, 2023 U.S. Dist. LEXIS 214747, at *23–30 (N.D. Ohio Dec. 4, 2023). Nor does he claim, whether in the Complaint or in his briefing, that the DFA Alternative Fund, which required the approval of the investment manager, was available to the Plans. *See* Compl. ¶¶ 35–41, 49–64; Pl. Br. at 29 (admitting the "pleadings offer no other details that would shed light on the process"). Instead, Payne suggests that this presents a "factual dispute." Pl. Br. at 29. Yet, Payne cannot save a "naked assertion devoid of … factual enhancement" by claiming there is a "factual dispute." *Johnson*, 2023 U.S. Dist. LEXIS 214747, at *29. Absent

allegations the Plans could have actually obtained DFA's approval to invest in the DFA Alternative Fund, Payne's claim fails.

### III. The Board of Directors Must Be Dismissed

Even if the Court concludes that Payne has stated a claim for relief, it should nevertheless dismiss the Board of Directors as defendants.

Payne acknowledges that the Complaint's only allegation of wrongdoing against the Board of Directors is found in Paragraph 10, which simply states that the "Board of Directors had discretion to select or reject the Plans' investments." Pl. Br. at 14. This does nothing more than restate ERISA's definition of who is a fiduciary. *See* 29 U.S.C. § 1002(21)(a) (noting that a party who exercises "discretionary authority" over plan investments is an ERISA fiduciary). Because Payne never "allege[s] anything beyond these legal conclusions," and because "mere conclusory statements" do not state a claim for relief, the Board of Directors should be dismissed as defendants. *Loomis v. Exelon Corp.*, No. 06 CV 4900, 2009 U.S. Dist. LEXIS 114626, at *16 (N.D. Ill. Dec. 9, 2009).

### IV. Payne Should Not Be Given Leave to Amend

The Court should deny Payne's requests to amend or dismiss without prejudice. "Rule 12(b)(6) dismissals are commonly with prejudice." *Phx. Entm't Partners, LLC v. Star Music, Inc.*, No. 06 CV 4900, 2017 U.S. Dist. LEXIS 195497, at *14 (D. Minn. 2017). Here, Payne is "on notice of potential deficiencies in [his] claims"— and he has done "nothing" to attempt to cure those deficiencies like filing a motion to amend under L.R. 15.1. *Pliam v. Cendant Mortg. Corp.*, No. 11-3720, 2012 U.S. Dist. LEXIS 58222, at *12 (D. Minn. 2012). Nor has Payne explained how re-pleading could cure his claims' defects.

Payne's Complaint should be dismissed with prejudice, just as the Eighth Circuit did in *Matousek*. 51 F.4th at 282 (affirming dismissal "with prejudice" given failure to follow local rules and request the opportunity to file an amended complaint).

## **CONCLUSION**

The Court should dismiss the Complaint in its entirety with prejudice.

Dated: June 7, 2024                                DORSEY & WHITNEY LLP

By *s/ Andrew Holly*
   Andrew Holly (#308171)
   holly.andrew@dorsey.com
   Brock Huebner (#0402698)
   huebner.brock@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

*Attorneys for Defendants*